DCHF

FILED

MAR – 4 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 09-12615
                                         TOG-4
Jose Azevedo and
Laudelina Azevedo

          Debtors.
_____/

**OPINION**

A debtor seeking contempt for a discharge violation must prove
that the creditor knew the discharge was applicable.  Jose Azevedo
owed Central Valley Dairymen, Inc. ("CVD") money, filed bankruptcy
under an alias but failed to give CVD notice.  Unaware of the
bankruptcy, CVD garnished Azevedo's wages.  Azevedo protested, but
refused to confirm his identity and at trial did not prove that the
discharge applied to CVD's claim.  Should CVD be held in contempt?

**FACTS**

Jose Azevedo ("Azevedo") emigrated from the Azores to the United
States at a young age.  He speaks only Portugese and has a fourth-
grade education.

From 1992 to 2008, together with Frank Silva, Azevedo did
business under the name Azevedo & Silva Dairy.  From 1992 to 2003,
both Azevedo and Azevedo & Silva Dairy were members of Central Valley
Dairymen, Inc. ("CVD"), a non-profit agricultural cooperative
association, which dealt in milk and milk products.  CVD knew Azevedo
by the name "Joe Azevedo" or by his trade name, Azevedo & Silva Dairy.

Azevedo and others members of CVD brought suit in Merced County,
California, against CVD and others (the "Merced County action").  *See*
*Nunes v. Central Valley Dairymen, Inc.*, No. 147653 (Cal. Super. Ct.
2008).  Azevedo's claim against CVD was for breach of contract, and
CVD's cross-complaint against Azevedo was also for breach of contract.

After trial in 2008, a jury returned a verdict of $94,610.09 for
Azevedo and against CVD and a verdict of $26,748.94 for CVD and
against Azevedo.  Other verdicts were rendered as well.  The parties
appealed.

In 2009, Azevedo and his wife, Laudelina Azevedo (together, the

2

"Azevedos"), filed a joint Chapter 7[1] bankruptcy case with
representation by attorney Scott Mitchell.  The petition did not
include either the name "Azevedo & Silva Dairy" or the name "Joe
Azevedo" as aliases used by Azevedo in the 8 years before the
petition.  The petition did describe the Azevedos' address as 15753
California Highway 140, Livingston, California, an address CVD
associated with Azevedo's alias, Joe Azevedo.

The Azevedos' Statement of Financial Affairs indicated that
Azevedo was self-employed as Azevedo & Silva Dairy.  Their schedules
did not, however, include the judgment entered in the Merced County
action, which had been appealed, or Azevedo's ownership interest in
Azevedo & Silva Dairy.

CVD was not included in the list of creditors and received no
notice of Azevedo's bankruptcy petition.  It was otherwise unaware of
Azevedo's bankruptcy at the time of Azevedo's bankruptcy filing.

After concluding the meeting of creditors, the Chapter 7 trustee
issued a Report of No Distribution.  In due course, the Azevedos
received their discharge, and their case was closed.

Azevedo, CVD, and others continued to pursue their appeals of the
judgment entered in the Merced County action.  In 2010, a state
appellate court reversed the portion of the judgment that awarded
Azevedo damages against CVD and affirmed the portion of the judgment
that awarded CVD damages of $26,748.94 against Azevedo.  CVD's
judgment has since grown to approximately $36,683.60.  Other portions
of the judgment inapplicable here were also affirmed and reversed.

---

[1] Unless otherwise indicated, all chapter, section, and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to
the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

3

In December 2012, unaware of the bankruptcy and seeking to collect its judgment against Azevedo, CVD's attorney Peter Dean ("Dean") garnished Azevedo's wages earned from Gallo Cattle Company, where Azevedo had accepted employment after Azevedo & Silva Dairy had ceased operations. In response to CVD's wage garnishment, Azevedo hired the Law Offices of Thomas O. Gillis ("GLO") to represent him.

On January 28, 2013, GLO's attorney Katharyne Taylor ("Taylor") contacted Dean, explaining that GLO represented Azevedo and that he had filed bankruptcy. Dean asked for a copy of the bankruptcy petition.

Following up on this phone call to Dean, GLO sent Dean a letter, which Dean received February 22, 2013. The letter recited GLO's representation of Mr. and Mrs. Jose Azevedo, and provided Azevedo's case number. GLO asserted that CVD appeared on the Azevedos' Schedule F. The letter also indicated that Azevedo had received his discharge and that such discharge precluded further levy on Azevedo's wages. It further stated that CVD had been given timely notice of Azevedo's bankruptcy. The letter demanded the withdrawal of the wage withholding order. But it made no reference to the debtor's aliases.

On February 26, 2013, a heated phone call occurred between Taylor and Dean in which Taylor demanded that CVD stop garnishments against Azevedo's wages and told Dean of Azevedo's bankruptcy. During this phone call, there was no discussion of Azevedo's aliases. Although Taylor described businesses in Azevedo's schedules that were similar to CVD, Dean disputed that CVD's claim had been scheduled. Dean inquired as to how the judgment debt owed to CVD had been discharged. Taylor informed Dean that he must not know much about bankruptcy or about the law.

On March 21, 2013, the Azevedos filed a motion to reopen their case and a motion for contempt against CVD and Dean, citing CVD's failure to release the garnishment once CVD had been notified of Azevedo's discharge.  The motion for contempt created a conflict of interest between CVD and Dean, so CVD hired attorney Thomas F. Camp ("Camp") to represent it in the contempt proceeding.

On April 16, 2013, Camp contacted GLO in writing regarding the facts of the contempt proceeding.  Camp raised the question of whether Azevedo, the person represented by GLO and whose debts had been discharged in bankruptcy, was the same person as Joe Azevedo, CVD's judgment debtor.  Camp noted that Dean had not been provided proof that Azevedo and Joe Azevedo were the same person.

On April 18, 2013, Camp and attorney Thomas Gillis ("Gillis") of GLO also had a contentious conversation about the garnishment.  Gillis was angry that CVD continued to raise the identity issue and told Camp, "I am not giving you shit."

On May 30, 2013, the court held a scheduling conference on Azevedos' motion for contempt.  After the hearing, the parties met and for the first time Azeveo provided CVD a copy of his California driver license and Social Security card.  Using that information, Dean conducted an investigation and determined that Azevedo and Joe Azevedo were likely to be the same person.  As a result, on June 15, 2013, CVD released its wage withholding order and returned $3,745.30 to GLO that CVD had collected by garnishment.

The court held an evidentiary hearing on Azevedo's contempt motion.  No party has requested an adjudication of the dischargeability of Azevedo's debt to CVD pursuant to Federal Rule of Bankruptcy Procedure 4007.

JURISDICTION

This court has jurisdiction.  *See* 28 U.S.C. § 1334; 11 U.S.C.
§ 105; General Order No. 182 of the U.S. District Court for the
Eastern District of California.  This is a core proceeding.  *See* 28
U.S.C. § 157(b)(2)(A).

DISCUSSION

**I.    Civil Contempt Standards for Remedying Discharge Violations**

Section 524(a) prescribes the effect of a Chapter 7 discharge.  A
Chapter 7 discharge "operates as an injunction against the
commencement or continuation of an action, the employment of process,
or an act, to collect, recover or offset any [discharged] debt as a
personal liability of the debtor, whether or not discharge of such
debt is waived."  11 U.S.C. § 524(a)(2).

A creditor who knowingly violates the discharge injunction may be
held to answer for civil contempt.  *See id.* § 105(a); *Renwick v.
Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls v.
Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).  The party
requesting contempt sanctions carries the burden of proof, which
requires "showing by clear and convincing evidence that the contemnors
violated a specific and definite order of the court."  *Renwick*, 298
F.3d at 1069 (quoting *FTC v. Affordable Media, LLC*, 179 F.3d 1228,
1239 (9th Cir. 1999)).  Such a specific and definite order "includ[es]
'automatic' orders, such as the automatic stay or discharge
injunction."  *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196
(9th Cir. 2003); *see also Flores v. Oh (In re Oh)*, 362 F. App'x 576,
577 (9th Cir. 2009) (rejecting argument that discharge order was
"vague and indefinite" and reasoning that the "terms of the discharge
injunction were unambiguous and fixed by statute").  "[T]o justify

6

sanctions, the movant must prove that the creditor (1) knew the
discharge injunction was applicable and (2) intended the actions which
violated the injunction." *Renwick*, 298 F.3d at 1069 (citing *Hardy v.*
*United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996)).

The remedy of contempt lies in the discretion of the court that
issued the discharge order. *See id.*; *Cox v. Zale Del., Inc.*, 239 F.3d
910, 915-16 (7th Cir. 2001) ("The remedy authorized by section
524(a)(2) has the advantage of placing responsibility for enforcing
the discharge order in the court that issued it."). The court has
this discretion because it has the power to enforce its own orders.
*See* 11 U.S.C. § 105(a). The debtor has no independent right to
enforce the discharge order. *Walls*, 276 F.3d at 504.

## II.  Application of the Discharge to the Judgment Debt

To justify contempt sanctions as a remedy for a creditor's
violation of the discharge order, the standard first requires the
debtor to show by clear and convincing evidence that the creditor
violated the discharge order. *See Renwick*, 298 F.3d at 1069. But the
creditor does not violate the discharge order unless the order applies
to the creditor's claim. In a Chapter 7 context, this means that
(1) the creditor took an action "to collect, recover or offset" a
particular debt "as a personal liability of the debtor," 11 U.S.C.
§ 524(a)(2), and (2) such debt is a "debt discharged under
section 727," *id.* § 524(a)(1). A debt is discharged if it "arose
before the date of the order for relief" and has not been excepted
from discharge "as provided in section 523 of this title." *Id.*
§ 727(b).

The analysis of whether the discharge order applies to a
creditor's claim raises difficult questions regarding the precise

7

contours of the debtor's prima facie case in showing a discharge

violation.   Two alternative standards are possible.   Making the prima

facie case may require proof only that a discharge order has been

issued for the relevant debtor and that the creditor took an act to

collect, recover or offset a debt.   By inference, such a standard

would shift to the creditor the burden of proof on the issue of the

applicability of the discharge order to the creditor's claim.

Alternatively, making the prima facie case for a violation may

require the debtor to prove, in addition to the other elements, that

the discharge applies to the debt on which the alleged discharge

violation is premised.   *See, e.g., Ellis v. Dunn (In re Dunn),* 324

B.R. 175, 180-81 (D. Mass. 2005).   Defining this aspect of the

debtor's prima facie case becomes particularly critical in cases in

which such debt was unscheduled and the creditor had no notice or

actual knowledge of the case in time to file a timely

nondischargeability action, a circumstance that could bring the debt

within the ambit of § 523(a)(3)(B) if the debt is of a kind described

in subsections (2), (4), or (6) of § 523.   In such cases, the task of

determining who must prove the applicability of the discharge to the

creditor's claim is complicated by the conflicting burdens of proof in

nondischargeability actions under subsections (2), (4), and (6) of

§ 523, *see Grogan v. Garner,* 498 U.S. 279, 289 (1991), and contempt

proceedings for discharge violations, *see Renwick*, 298 F.3d at 1069.

This court holds a debtor's prima facie case includes an initial

showing, in addition to the other elements discussed, that the scope

of the discharge extends to the debt that the creditor had taken an

action to collect.   In the case of an unscheduled creditor in a no-

asset, no-bar-date Chapter 7, applying this standard results in

8

placing the burden on the debtor to show that none of the exceptions to discharge under § 523(a)(2), (4), and (6) apply to the debt by operation of § 523(a)(3)(B).

Three rationales support the conclusion about what the debtor's prima facie case entails. First, defining the prima facie case this way adheres to Ninth Circuit precedent that requires the party requesting contempt sanctions to carry the burden of showing a violation of the court's order. *Renwick*, 298 F.3d at 1069.

> The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.

*Id.* (quoting *Affordable Media*, 179 F.3d at 1239). Showing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised. *See* 11 U.S.C. § 524(a)(1)-(2) (prohibiting acts to collect only debts that are discharged). Therefore, as part of the initial burden of showing the violation of the discharge order, the debtor as the party requesting contempt sanctions must show the applicability of the discharge order to the debt that the creditor had taken an action to collect. Limiting the debtor's prima facie case to showing only that the discharge order has been issued without requiring proof that the discharge applied to the creditor's claim inappropriately shifts the burden of proof to the creditor, the target of the contempt sanction. *Dunn*, 324 B.R. at 180.

Second, requiring such a showing as an element of the debtor's prima facie case is consistent with other courts' resolution of the issue. *See Dunn*, 324 B.R. at 180; *In re Lang*, 398 B.R. 1, 3-4 (Bankr.

9

N.D. Iowa 2008) ("The moving party must also demonstrate that the creditor's conduct relates to a debt that is encompassed by the discharge order."); *Gakinya v. Columbia Coll. (In re Gakinya),* 364 B.R. 366, 370 (Bankr. W.D. Mo. 2007). *But see In re Hicks,* 184 B.R. 954, 959 (Bankr. C.D. Cal. 1995). Only after the debtor has made this initial showing on applicability of the discharge to the creditor's claim does the burden on this issue shift to the creditor.

Third, in contempt proceedings involving unscheduled debts within the scope of § 523(a)(3)(B) in no-asset, no-bar-date Chapter 7 cases, policy considerations favor placing on the debtor the obligation of going forward with the evidence on the issue of applicability of the discharge order to the creditor's claim. The debtor in such cases is the party best positioned to avoid the problem at the outset. The debtor creates the uncertainty about whether the debt that the creditor had taken action to collect was discharged by failing to schedule the debt or list the creditor on the creditors' matrix and then failing to bring a timely action under Rule 4007 to clarify the issue, *see* Fed. R. Bankr. P. 4007. As a result, when the debtor is responsible for the uncertainty about whether the debt has been discharged, requiring the debtor to make an initial showing of the applicability of the discharge order to the debt, and, by extension, a showing of the inapplicability of § 523(a)(3)(B), does not work an injustice.

This point is illustrated well by *Ellis v. Dunn (In re Dunn),* 324 B.R. 175 (D. Mass. 2005). In *Dunn,* the debtor hired a law firm to prosecute a workers' compensation claim, and during the pendency of the workers' compensation case, she filed a Chapter 7 bankruptcy case in which she did not list the law firm as a possible creditor. Later,

she received her discharge.  After the debtor lost her workers'
compensation claim, her attorneys commenced an action to collect the
expenses the firm had incurred in prosecuting the case.  The debtor
defeated the attorneys' collection action.  Then, she reopened her
bankruptcy and brought an adversary proceeding against the law firm
for contempt for violation of the discharge injunction.  The
bankruptcy court granted the debtor's motion for summary judgment on
the issue of contempt and awarded her damages of $10,407.75.  On
appeal, the district court reversed the bankruptcy court's order
granting summary judgment and vacated the sanctions award.  *Id.* at
181.  The district court specifically rejected the argument that
knowledge of the discharge amounted to inquiry notice, which imposed
upon it the duty to learn the scope of the order.  *Id.* at 179-80.  The
court explained:

> But if it is not clear whether the debtor's discharge
> affected a particular debt or a particular creditor, actual
> knowledge simply of the existence of that order by itself
> may not be sufficient to presume a deliberate violation of
> the order.
>
>     The discharge order at issue here did not release [the
> debtor] from *all* debts; it released her from all
> *dischargeable* debts.  Some reference to the possible
> exceptions to discharge under 11 U.S.C. § 523 was therefore
> . . . necessary to understand the actual scope of the
> injunction.

*Id.* at 180 (emphases in original).

    In *Dunn*, the district court specifically faulted the bankruptcy
court for shifting the burden of proof on the applicability of
§ 523(a)(3)(B).  The district court stated that "[i]n effect, the
bankruptcy judge employed a presumption that shifted to the appellants
the burden of proving they were not in contempt.  This was an error."
*Id.* at 181.

11

1    Azevedo's bankruptcy case was a no-asset, no-bar-date Chapter 7.

2  Accordingly, other than debts for fiduciary or non-fiduciary fraud,

3  false financial statements, or willful and malicious injury, Azevedo's

4  debts have been discharged--even though unscheduled. *See* 11 U.S.C. §

5  523(a)(3)(A); *White v. Nielsen (In re Nielsen),* 383 F.3d 922, 926 (9th

6  Cir. 2004); *Beezley v. Cal. Land Title Co. (In re Beezley),* 994 F.2d

7  1433, 1434-41 (9th Cir. 1993) (per curiam). By contrast, if Azevedo

8  had any unscheduled debts for fiduciary or non-fiduciary fraud, false

9  financial statements, or willful and malicious injury, such debts may

10  not have been discharged if § 523(a)(3)(B) applies. *Id.*

11    The judgment debt owed to CVD was unscheduled. The question of

12  whether this debt is nondischargeable by operation of § 523(a)(3)(B)

13  has never been adjudicated. The only evidence provided that addresses

14  this question was that the underlying action was based on mutual

15  claims for breach of contract. This evidence is not clear and

16  convincing evidence that the discharge order applied to the judgment

17  debt. That the parties pursued only contract claims in the underlying

18  action does not preclude a later adversary proceeding under §

19  523(a)(2), (4), or (6). *See Brown v. Felsen,* 442 U.S. 127, 138-39

20  (1979); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 873 (9th Cir.

21  2005). Thus, Azevedo has not shown a violation of the discharge

22  order, which is a prima facie element of his case.

23  **III. Knowledge that Discharge Injunction Was Applicable to the
     Judgment Debt**

24

25    A party seeking contempt must prove that the creditor knew the

     discharge injunction was applicable. *Bennett,* 298 F.3d at 1069. This
26
     requires that the creditor actually knew that the discharge was
27
     applicable to its claim. *ZiLOG,* 450 F.3d at 1007-10 & n.14; *Dunn,* 324
28

12

1 | B.R. at 178-79.

2 | **A.    Knowledge of Azevedo's Identity**

3 | The parties do not dispute that CVD had neither notice nor

4 | knowledge of the bankruptcy prior to January 28, 2013, when Taylor

5 | called attorney Peter Dean.  The issue is whether Azevedo has shown by

6 | clear and convincing evidence that CVD, after this phone call on

7 | January 28, 2013, actually knew that the judgment debtor it knew by

8 | the alias "Joe Azevedo" was the same person as Azevedo, who had filed

9 | bankruptcy and received a discharge.

10 | Azevedo offers several arguments to show CVD's knowledge of

11 | Azevedo's identity.  First, he posits that such knowledge may be found

12 | based on the similarity between Azevedo's name and the name of

13 | Azevedo's alias, "Joe Azevedo."  But this name similarity is not

14 | sufficient to show knowledge under the clear and convincing standard.

15 | Furthermore, Azevedo did not include on the petition either a middle

16 | name or initial, and "Azevedo," "Jose," and "Joe," are all frequently

17 | appearing names.  Any weight the evidence of name similarity may have

18 | is also diminished by Azevedo's failure to include his trade name on

19 | the petition, list CVD as a creditor, or schedule the judgment debt

20 | owed to CVD.

21 | Moreover, evidence that CVD should have known its judgment debtor

22 | was the same person as Azevedo based on the similarity of their names

23 | fails to satisfy the requisite standard to show that CVD actually knew

24 | they were the same person.  Coupled with Azevedo's failure to list CVD

25 | at the outset and GLO's refusal to confirm Azevedo's identity until

26 | May 30, 2013, the court does not find that Azevedo has sustained his

27 | burden as to CVD's knowledge of his identity.

28 | Second, Azevedo argues that CVD knew of his identity from the

13

fact that the Social Security number for Azevedo and CVD's judgment debtor were identical. The problem is that CVD did not know any digits of its judgment debtor's Social Security number and knew only the last four digits of Azevedo's Social Security number. CVD's abstract of judgment against does not list a Social Security number, and Azevedo's petition has only the last four digits of this number.

Third, Azevedo argues that CVD should have known that he was the same person as Joe Azevedo given the inclusion of the Livingston street address on the petition, which was the same address appearing on CVD's abstract of judgment. Similarly, he argues that CVD had such knowledge because of Azevedo's inclusion of the trade name "Azevedo & Silva Dairy" in his Statement of Financial Affairs. Certainly, these facts are circumstantial evidence of CVD's knowledge of Azevedo's identity. But Dean denied drawing the inference necessary to know Azevedo's identity despite reviewing Azevedo's petition and schedules. As applied to these facts, *ZiLOG* requires Azevedo as the moving party to show by clear and convincing evidence that CVD actually knew that Azevedo and CVD's judgment debtor were the same person. While it may be likely that CVD understood Azevedo's identity, the court finds that the debtor has not shown this fact by clear and convincing evidence.

**B.   Knowledge of the Dischargeability of the Judgment Debt**

Aside from the question of whether § 523(a)(3)(B) excepted CVD's debt from discharge, Azevedo must prove by clear and convincing evidence CVD actually knew that the judgment debt Azevedo owed was discharged. *ZiLOG*, 450 F.3d at 1007-10 & n.14; *Dunn*, 324 B.R. at 178-79 (rejecting a standard of inquiry notice to infer knowledge of the scope of the discharge).

*Nash v. Clark County District Attorney's Office (In re Nash)*, 464

14

B.R. 874 (B.A.P. 9th Cir. 2012) is instructive.  Nash was a gambler who often visited the Hard Rock Café and Casino in Las Vegas.  He established a "marker account," a gambler's line of credit with a casino.  His funds were insufficient to cover an obligation to the casino of $12,500 in markers.  The Clark County, Nevada, District Attorney's Office arranged a payment plan to resolve the matter.  Nash defaulted under this payment plan, and the district attorney issued a warrant for his arrest.  Next, Nash filed a Chapter 7 bankruptcy, and received his discharge in the case.  He had scheduled the debt to the casino as undisputed.  Following his discharge, Nash was arrested.  His attorney reopened his bankruptcy case.  The district attorney offered to defer criminal prosecution to allow Nash to work out the problem with the casino.  After discussion between Nash and the casino, Nash entered into a settlement with the district attorney that provided for payoff of the debt over time.  Nash then brought an adversary proceeding against the casino and the district attorney, requesting sanctions against them for their violation of the discharge injunction.  The bankruptcy court found that Nash's gambling debt had been discharged but denied the requested sanctions against the casino and the district attorney.  *Id*. at 878.  On appeal, the Bankruptcy Appellate Panel for the Ninth Circuit affirmed.  *Id*. at 885.  The panel held that the bankruptcy court did not abuse its discretion in declining to award sanctions against the casino and the district attorney.  *Id*. at 880-85.  The panel discussed the knowledge requirement stated in *Bennett*, 298 F.3d at 1069, explaining that the creditor that is the subject of the contempt proceeding must subjectively understand that the debt was discharged:

> The Ninth Circuit has held that the first prong

15

1  of the [*Bennett*] test requires that the bankruptcy
   court be shown that the target creditor knew that the
2  discharge injunction was applicable to its claim.  But
   . . . the evidence in this case shows that neither
3  Hard Rock nor the [district attorney] acknowledged
   that the discharge injunction in Nash's bankruptcy
4  case was applicable to collection of marker account
   debt.  As they explained to Nash's attorney, it was
5  instead their view that, because the matter was a
   criminal proceeding, it was not impacted by the
6  discharge.

7  *Nash*, 464 B.R. at 880 (citation omitted).

8      In this case, Azevedo has offered insufficient evidence that CVD

9  and Dean actually knew that the discharge order applied to the

10 judgment debt Azevedo owed to CVD.  Camp said that he knew of the

11 *Beezley* no-asset, no-bar-date rule.  But the court treats this

12 statement as indicating knowledge only of § 523(a)(3)(A), not §

13 523(a)(3)(B).  Thus, Azevedo has not made a clear and convincing

14 showing that the respondents knew that § 523(a)(3)(B) was inapplicable

15 to the judgment debt, bringing it within the scope of Azevedo's

16 discharge.

17                            **CONCLUSION**

18     For each of these reasons the court finds that Azevedo has not

19 sustained his burden of proof, and his request for contempt sanctions

20 against CVD and Peter Dean will be denied.  The court will issue a

21 separate order.

23 Dated: March 4, 2014

24                            _____
                             Fredrick E. Clement
25                           United States Bankruptcy Judge

                              16

# Instructions to Clerk of Court

### Service List

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

Persons Specified Below:

Jose and Laudelina Azevedo
15753 Highway 140
Livingston, CA 95334

Thomas O. Gillis, Esq.
1006 H Street, Suite 1
Modesto, CA 95354

Thomas F. Camp, Esq.
3297 Mt. Diablo Blvd.
Lafayette, CA 94549

Peter J. Dean, Esq.
P. O. Box 657
Oakdale, CA 95361

Robert Hawkins, Esq.
Chapter 7 Trustee
1849 N. Helm, #110
Fresno, CA 93727

Office of the United States Trustee
2500 Tulare Street, Suite 1401
Fresno, CA 93721